**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
- Eastern Division -**

| | |
|---|---|
| HANNAH ALMQUIST,<br><br>               Plaintiff,<br><br>    v.<br><br>TK BEHAVIORAL, LLC, *individually and doing business as,* TIMBERLINE KNOLL, ACADIA HEALTHCARE COMPANY, INC., TRACEY PAPESH individually, and TIANA WILLIAMS individually,<br><br>            Defendants. | Civil Action No. 24-cv-12227<br><br>**PLAINTIFF DEMANDS A TRIAL BY JURY** |

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

Plaintiff, HANNAH ALMQUIST, (hereinafter referred to as "Plaintiff"), by and through her undersigned attorneys, as and for Plaintiff's Complaint in this action against the Defendant TK BEHAVIORAL, LLC, *individually and doing business as* TIMBERLINE KNOLL, and Defendant ACADIA HEALTHCARE COMPANY, INC., Defendant TRACEY PAPESH (hereinafter "Defendant PAPESH"), and Defendant TIANA WILLIAMS (hereinafter "Defendant WILLIAMS") (hereinafter referred to collectively as "Defendants"), upon both information and belief, alleges as follows:

## NATURE OF THE CASE

1. Plaintiff Almquist brings this is an action for monetary damages and all other appropriate relief as deemed appropriate by the court, for interference with Plaintiff's rights and retaliation pursuant to the FMLA, and hereby seeks monetary relief to redress Defendants' collective unlawful conduct.

1

2. Plaintiff brings this action charging that Defendants violated Plaintiff's rights pursuant to 29 U.S.C. § 2612 ("FMLA") and seeks damages to redress the injuries she has suffered as a result of the Defendants' actions.

## JURISDICTION AND VENUE

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391. In accordance with the Federal Rules of Civil Procedure, the venue is proper in this district based upon the fact that Defendants' unlawful actions occurred within the Northern District of Illinois. Furthermore, Defendants were and are still believed to be conducting business in this judicial district. In sum, a substantial part of the events or omissions giving rise to this action, including the unlawful conduct herein occurred in this district.

## PARTIES

4. Plaintiff HANNAH ALMQUIST (hereinafter also referred to as "PLAINTIFF") is a female who resides within Will County in the State of Illinois.

5. At all times material, Defendant TK BEHAVIORAL, LLC, *individually and doing business as* TIMBERLINE KNOLL is a foreign limited liability company established pursuant to the laws of the State of Delaware and is otherwise authorized to do business in the State of Illinois.

6. At all times material, Defendant ACADIA HEALTHCARE COMPANY, INC. is a foreign business corporation established pursuant to the laws of the State of Delaware and is otherwise authorized to do business in the State of Illinois.

7. At all times material, Defendant TK BEHAVIORAL, LLC, *individually and doing business as* TIMBERLINE KNOLL and Defendant ACADIA HEALTHCARE COMPANY, INC (hereinafter referred to as "Defendants" and/or "Employer") were Plaintiff's joint and/or sole employer.

2

8. At all times material, Defendants EMPLOYER operates a business location at 40 Timberline Drive, Lemont, Illinois, 60435 (hereinafter referred to as the "Main Campus").

9. At all relevant times, Defendants EMPLOYER have been continuously doing business across the State of Illinois.

10. Defendants' EMPLOYER exact number of employees is unknown to Plaintiff, but upon information and belief, there are well more employees than the statutory minimum required for coverage under the FMLA.

11. At all times material, Defendant TRACEY PAPESH (hereinafter referred to as "Defendant PAPESH") was and is employed for Defendant Employer as "Director of Case Management."

12. At all times material, Defendant PAPESH had supervisory authority over PLAINTIFF, including but not limited to the ability to change Plaintiff's hours, work assignments, work schedule, and work location, as well as the ability to, whether directly or through recommendation, hire and/or fire Plaintiff.

13. At all times material, Defendant TIANA WILLIAMS (hereinafter referred to as "Defendant WILLIAMS") was and is employed for Defendant Employer as "Director of Case Management."

14. At all times material, Defendant WILLIAMS had supervisory authority over PLAINTIFF, including but not limited to the ability to change Plaintiff's hours, work assignments, work schedule, and work location, as well as the ability to, whether directly or through recommendation, hire and/or fire Plaintiff.

15. Each Defendant sued in this action has acted, in all respects pertinent to this action, as the other Defendants agent, and has carried out a joint scheme, enterprise, business plan, or policy in all

respects pertinent hereto. The acts of each Defendant are therefore legally attributable to the other Defendant(s).

**MATERIAL FACTS**

16. In or around 2010, Plaintiff ALMQUIST was diagnosed with Multiple Sclerosis ("MS").

17. Multiple Sclerosis ("MS") is a chronic illness of the central nervous system that causes the breakdown of the protecting covering of an individual's nerves.

18. As a result of her diagnosis, classified as "relapsing/remitting," Plaintiff endures varying unpredictable symptoms including but not limited to severe fatigue, memory loss or fog, among other permanent cognitive, mental and physical symptoms.

19. Despite extensive therapy and treatment, Plaintiff is substantially limited and has substantial noticeable and permanent limitations on her ability to sleep, work, think, walk/stand, etc.

20. On or around August 2015, PLAINTIFF was hired by Defendants EMPLOYER at the Main Campus Location in Lemont Illinois, as a "Behavioral Health Specialist."

21. At the outset of her employment, having endured the symptoms and associated flare ups for a predominant portion of her life and aware of the uncertain frequency of need, Plaintiff disclosed to Defendants in no uncertain terms that she lives with MS.

22. Throughout the course of her employment, Plaintiff did in fact endure numerous flare ups, associated with her underlying MS diagnosis. Despite the varying severity, Plaintiff would commonly take oral steroids and elect outpatient care, as opposed to the more intensive inpatient care that would require her to miss work.

23. From time to time, Plaintiff would require time off from work, both permitting her the ability to focus on her own health, as well as the health of her father who was tragically terminally ill.

4

24. Despite her underlying illness, throughout the course her career with Defendants, Plaintiff migrated in roles, progressing as she developed further skills sets and value for Defendants.

25. Over the course of nearly a decade, Plaintiff progressed from that of a Behavioral Health Specialist, to that of an Administrative Representative, a Crisis Prevention Intervention Instructor, Transportation Coordinator, and then ultimately her final role as the Facility Operations Supervisor.

26. In or around December 2021, Defendants promoted Plaintiff to the role of "Facility Operations Supervisor."

27. In or around the summer of 2022, as a result of taking on added hours and responsibilities, Plaintiff sought a slight salary increase.

28. After much communication, Plaintiff was informed that her prior manager, Defendant Tracey Papesh, was in need of a new Case Manager, a role Plaintiff was happy to fill.

29. In stepping into this role, Plaintiff was immediately challenged by the unreasonable demand and pressures created by Defendant Papesh.

30. By means of an example, and not meant to be an exhaustive list, Defendant Papesh would call Plaintiff, during work hours and frequently after hours, crying and complaining about how challenge the role of Director of Case Management was for Defendant Papesh.

31. While she aimed to be supportive, Plaintiff wanted to make all efforts to assist Defendant Papesh, despite her own health needs.

32. Over the following weeks, Defendant Papesh proceeded to systematically remove numerous employees under her supervision, removing the staff she felt was inferior and/or ineffective in their roles.

33. During this time, Defendant Papesh had Plaintiff assist in replacing the terminated staff, as well as complete extensive work on developing an organized filing system that better allowed the team to assist one another.

34. Over time, as the department became manageable, Plaintiff noticed the demand and stress of the new role was causing her MS to flare up. As a result, Plaintiff began to approach Defendant Papesh, requesting time off so that she can schedule doctors' appointments and treatment.

35. Despite the awareness of Plaintiff's diagnosis and need for treatment, Defendant Papesh failed to comply with the general notice requirements of FMLA, including but not limited to failing to inform Plaintiff of what procedures were in effect by Defendants to ensure Plaintiff could seek leave.

36. Rather, Defendant Papesh began to further pressure Plaintiff, ignoring her needs for medical treatment and instead falsely characterizing Plaintiff as a "slacker," seemingly taking every opportunity to humiliate and blame Plaintiff for the failures of Defendant Papesh's department.

37. On or around September 8, 2022, Plaintiff began treatment with new physician. Per this consultation, it was readily apparent that Plaintiff would require a more comprehensive treatment plan, including but not limited to fresh imaging/scan, lab work, and then a diagnosis course of treatment.

38. On or around September 9, 2022, understanding that this process would require time and patience, as well as cooperation and communication with her manager, Plaintiff prepared the necessary Healthcare Provider Request form with the assistance of her physicians, and submitted the documentation to Defendants.

39. In or around the beginning of September 2022, Plaintiff submitted an application to receive Family and Medical Leave, effective September 22, 2022, and anticipating continuation of this leave through at least March 22, 2023.

40. Defendants provided Plaintiff confirmation of her request for FMLA leave on or around September 23, 2022.

41. On or around October 20, 2022, Plaintiff received a call from what she believed to be Defendant Papesh based on the caller identification. Surprisingly, upon answering the call, Plaintiff was confronted by a member of the Defendants' Human Resources team, Director Tiana Williams.

42. Defendant WILLIAMS proceeded to berate Plaintiff, insisting that Plaintiff was not entitled nor approved to take time off for her upcoming infusion treatment. In fact, during their call, Defendants Papesh and Williams vilified Plaintiff, utilizing her prior medical leave to care for her terminally ill father as negative and insisting that the department was not in need of a "part time" employee.

43. Throughout their meeting, Defendant Papesh repeatedly insisted that she was not okay with Plaintiff taking consecutive days off, despite the need presented by her doctor and submitted for approval under FMLA.

44. Contrary to their assertions, Defendants were providing mixed messaging and no clarity as to her leave approval/denials.

45. In or around the end of September 2022, following her infusion treatments, Plaintiff began to endure extreme fatigue and nausea. As a result, on or around September 29, 2022, Plaintiff's doctor submitted a request to extend Plaintiff's time off through October 4, 2022, seeking to provide her body with the means to recover.

7

46. Plaintiff Almquist provided the form to Defendants, ensuring they were in the loop as quickly as possible, knowing that Ms. Papesh was seemingly looking to terminate Plaintiff under false pretenses.

47. All the while, Plaintiff was doing all she could to work with Ms. Papesh to provide adjustments and options to her schedule, despite Ms. Papesh's unwillingness to respectfully engage, even so much as suggesting Plaintiff be reduced to part-time schedules. All the while, Defendant Papesh refused, without justification, seemingly focused on pushing Plaintiff out of the company entirely.

48. Having reached her limit, Plaintiff notified the Defendants' corporate team that she was enduring severe harassment and retaliation from both Defendant Papesh and the Human Resources department, stemming from her seeking FMLA leave.

49. Despite her complaint, no corrective action was taken. Instead, the conduct remained unchecked, and the retaliation continued to escalate.

50. By means of example Plaintiff was moved to the High Security lodge, where she worked as the sole team member and no manager on site. Defendant Papesh knowingly placed Plaintiff in the most difficult and challenging assignment, with the purpose or effect of forcing Plaintiff to resign.

51. Over the following weeks, Plaintiff endured repeated questions and challenges as to her medical absences. Plaintiff Almquist made clear, she felt she was putting her health on the back burner, placing then needs and debilitating demands of her employer over her own care

52. On or around November 30, 2022, Defendants constructively discharged Plaintiff. Defendants made conditions so onerous, abusive, and intolerable for Plaintiff that no disabled employee

in Plaintiff's shoes would have been expected to continue working under such conditions and such that Plaintiff choice to resign was void of choice or free will.

53. The above are just some examples of some of the discrimination to which Defendants subjected Plaintiff on a continuous and on-going basis throughout Plaintiff's employment.

54. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

55. As a result of the acts and conduct complained of herein, Plaintiff has or may suffer the loss of income, the loss of salary, bonuses, benefits, and other compensation which such employment entails.

56. Plaintiff also suffered emotional pain, humiliation, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

57. Plaintiff has further experienced severe emotional and physical distress.

58. Plaintiff claims aggravation, activation, and/or exacerbation of any preexisting condition(s).

59. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages against all the Defendant.

60. Plaintiff claims a continuous practice of discrimination and claims continuing violations and makes all claims herein under the continuing violations doctrine.

61. Plaintiff claims actual discharge as a result of the unlawful discrimination and denial of federal rights.

62. The Defendants have exhibited a pattern and practice of discrimination, interference and retaliation.

## COUNT I
### Interference with Rights in Violation of
### Family and Medical Leave Act, 29 U.S.C. § 2601, et seq.

63. Plaintiff Hannah Almquist repeats every allegation made in the above paragraphs of this complaint.

64. The FMLA provides eligible employees of covered employers with up to 12 workweeks of unpaid, job protected leave in a 12-month period for, specified health and caregiving reasons, including a serious health condition that makes the employee unable to perform the essential functions of her job, as well as pregnancy and caring for a new child. *29 U.S.C. §§ 2601 et seq*

65. A covered employer must provide FMLA benefits and protections to eligible employees and comply with their responsibilities under the FMLA and its regulations at *29 C.F.R. part 825*.

66. At all relevant times, Plaintiff was an eligible employee of a covered employer with a qualifying medical condition and/or caregiving reason entitling them to the protection of the FMLA.

67. The Defendants violated the FMLA by interfering with, restraining and/or denying Plaintiffs' rights under the FMLA by, *inter alia:*

   a. Failing to comply with the general notice requirements under the FMLA;

   b. Failing to comply with the eligibility notice requirements under the FMLA;

   c. Failing to comply with the rights and responsibilities notice requirements under the FMLA;

   d. Failing to comply with the designation notice requirements under the FMLA;

   e. Failing to provide notice of a fitness-for-duty certification with the designation notice as required by the FMLA;

    f.   Discharging and/or constructively discharging, suspending and/or disciplining Plaintiff notwithstanding that Plaintiff was fit to perform her duties and return to work at the end of her FMLA leave;

    g.   Retaliating against Plaintiff for asking for attempting to exercise her rights under the FMLA;

    h.   Failing to provide Plaintiff with the proper FMLA forms and/or medical certifications;

    i.   Failing to supervise and/or train its employees and supervisors on compliance with the provisions of the FMLA;

    j.   Failing to have in place proper FMLA policies, procedures and compliance; and/or

    k.   Otherwise violating the FMLA.

68. The Defendants' violations of the FMLA were grossly negligent and/or willful.

69. As a direct and proximate cause of Defendants' willful violations of the FMLA, Defendants are liable for Plaintiff's compensation and benefits lost by reason of the above violations, for other actual monetary losses sustained as a direct result of the Defendants' violations, and for appropriate equitable or other relief tailored to the harm suffered by Plaintiff. *See 29 CFR 825.300 (e)*.

70. Defendant acted with the intent to violate Plaintiff's federally protected rights.

71. Defendants acted upon a continuing course of conduct.

72. As a result of Defendants' violations of the FMLA, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

73. Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

## COUNT II
### Retaliation with Rights in Violation of
### Family and Medical Leave Act, 29 U.S.C. § 2601, et seq.

86. Plaintiff Hannah Almquist repeats every allegation made in the above paragraphs of this complaint.

87. The FMLA protects employees from retaliation. The FMLA prohibits employers from retaliating against an employee for "having exercised or attempted to exercise FMLA rights" and using "the taking of FMLA leave as a negative factor in employment actions." 29 C.F.R. § 825.220(c).

88. At all relevant times, Plaintiff was eligible employees of a covered employer with a qualifying medical condition and/or caregiving reason entitling her to the protections of the FMLA.

89. Defendants violated the FMLA by retaliating and discriminating against Plaintiff for exercising her rights under the FMLA by, *inter alia*:

    a.  Failing to continue to contribute to Plaintiff's health benefits while she was placed on involuntary medical leave;

    b.  Discharging and/or constructively discharging, suspending and/or disciplining Plaintiff notwithstanding that Plaintiff was fit to perform her duties and return to work at the end of her FMLA leave;

    c.  Retaliating against Plaintiff for attempting to exercise her rights under the FMLA;

    d.  Failing to supervise and/or train its employees and supervisors on compliance with the provisions of the FMLA;

    e.  Failing to have in place proper FMLA policies, procedures and compliance; and,

    f.  Otherwise violating the FMLA.

90. The Defendants' violations of the FMLA were grossly negligent and/or willful.

91. As a direct and proximate cause of Defendants' willful violations of the FMLA, Defendants are liable for Plaintiff's compensation and benefits lost by reason of the above violations, for other actual monetary losses sustained as a direct result of the Defendants' violations, and for appropriate equitable or other relief tailored to the harm suffered by Plaintiff. *See 29 CFR 825.300 (e)*.

92. Defendant acted with the intent to violate Plaintiff's federally protected rights.

93. Defendants acted upon a continuing course of conduct.

94. As a result of Defendants' violations of the FMLA, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

95. Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law

## INJURY AND DAMAGES

As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of her career and the loss of a salary, bonuses, benefits and other compensation which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, physical pain, humiliation, mental anguish, suffering, inconvenience, injury to reputation, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

## JURY DEMAND

Plaintiff Hannah Almquist requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Hannah Almquist demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including, but not limited to, all compensatory damages, emotional distress, punitive damages, liquidated damages, statutory damages, attorneys' fees and costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: November 26, 2024                     **HAWKS QUINDEL, S.C.**
                                             *Counsel for Plaintiff*

                                             */s/ M. Nieves Bolaños*

M. Nieves Bolaños
HAWKS QUINDEL, S.C.
111 E. Wacker Drive, Suite 2300
Chicago, IL 60601
(312) 224-2423
Email: mnbolanos@hq-law.com